May it please the Court, Chris W. Katzenbach appearing for Appellant Alex Corn. I'd like to take five minutes for rebuttal, Your Honor, if possible. Thank you. Your Honor, this case primarily addresses the issue of the right of union members to vote on dues and assessments that they will then have to pay from the wages that they earn. The LMRDA gives them the right to have such a vote. It gives them the right to have such a vote by a secret ballot. And in this case, they did not get that right. The defendants in this case have argued that the use of the dues convention procedure by which the members of the district council can impose dues and induce crease on a single local union, one of 15 local unions within that district council, is justified. We submit that it is not, that rather the issue here is the right of local unions to assess dues on themselves, local union members to assess dues increases on themselves, and that the process by which a district council assesses dues on a single local union is not justified by the statute. Is it your position that the district council had, under its constitution, could not impose? No. Is that your argument? No. Our position is that. Well, then what's your argument? Tell me what your argument is. Explain to me again what. The argument is that under the LMRDA they cannot do that, that their constitution, to the extent it says they can, is unlawful under section under the LMRDA. So where, how does it conflict with the LM? Under section 101A3A of the LMRDA, dues increases and assessments for members of local unions are to be imposed by secret ballot vote of the local unions themselves, that the method by which the union acted here under section 101A3B is not applicable where dues are being increased for a single local union. Counsel, under the Raines case, as I understand that case, the Seventh Circuit said that the international could impose a local dues requirement as long as it was imposing it on all local unions. That's correct. They were saying in order to secure that local unions were sufficiently funded. So your problem isn't really that a regional or international was imposing dues on locals. It is that it was imposing it on a single local and not on everybody. Exactly. And that is, of course, the distinction that Morey itself noted when it was struggling with the question of whether an across-the-board increase, whether a dues increase for a very large portion of membership, members in a construction division of the Boilermakers, fell into the Raines view as an across-the-board increase for members, or whether it was more like an attack on an increase like for a single local union, which the court in White had held to be unlawful. How is the circumstance here so different from what happened in Morey? Well, one, Morey was an increase on of course basically viewed by the court as an across-the-board increase within the idea of Raines. Two, the people in the Boilermakers. But it was on a craft, wasn't it? Well, it was a craft. And from the way I read the opinion, the craft, it wasn't necessarily the craft members, the craft workers were not necessarily part of every union that made up the council. I think in Morey, it was apparently a craft that of construction industry boiler work, Boilermakers, that were distributed throughout the union in variety of local unions. Right. But not all. Yeah. But perhaps not all.   Right. But the court doesn't really – the court says it's widely distributed, but doesn't exactly give information as to what it means precisely by that. So why is this so different? Because this is a single local union. What makes that – what makes that? There was a council meeting or convention, whatever they call it, where they had the representatives there, and there were representatives from Local 66 there. They voted. Well, there are a number of factors that make it very different. First, the targeting one local union out of 15 is not an across-the-board, even under any standard. I'm sorry. I missed the first part of your comment. There are a number of factors that make it different. First, the targeting one local union out of 15 for a dues increase is very different from anything that resembles an across-the-board increase. Let me ask you this. Was the dues increase negotiated as part of a new collective bargaining agreement that was negotiated by the council? No, Your Honor. I don't believe that that was the case. As the evidence shows, the actual contracts that are at issue here are contracts negotiated by Local 166 itself. And the council had no involvement in the negotiation of those contracts? No, I don't believe there's any evidence that the council was involved in a negotiation of a different set of council agreements. We actually, in the brief, we described the contracts here as the Local 166 contracts, which are negotiated by it. Then you have the contracts which apply to most of the other local unions in the area, which are called the district. I think we call the district council contracts. But, no, this contract is not. But, no, the dues increase were not negotiated as part of any contract provision. Now, the dues that the union members are going to pay, they were going to go to Local 66, correct? 166. 166. Yes, they were going to. They weren't going to other. No, they weren't going to. To the other unions or anything else like that. No, and they weren't going to the district council. They weren't going to the international. They were going only to Local 166. And I guess for whatever it's worth, they did have that, those stand-up kind of votes that. Yeah, but stand-up vote is not a secret ballot. I understand that. You know, so I don't. So I guess the answer to your question is it's not worth anything. Right. That law requires a secret ballot vote. If you accept it. Well, unless this alternative is set. Well, the argument of. Alternative method is proper. Well, Your Honor, if you look. We've gone through that in some detail in terms of statutory construction, but I imagine the following situation. If their argument were correct and they could act under section, subsection B as opposed to subsection A, then you would have the following situation. For example, local unions would clearly have the right to set their own dues under their idea that local unions could set dues and then district council could set dues. So what happens if the local union sits there and says we're tired of paying this vote, says we're cutting our dues. District council turns around and says, no, you're not. You're raising them. Local union says, no, we don't think so. We're having another vote. We're lowering them. District council says, no, we're raising them. The international gets in and says, pox on both of you. We're raising them. Right? How could that be the idea of how could that be an advancing union democracy to have dues ping pong? I don't want to get involved in sort of philosophical discussion. But there's another. But you do admit that after rains that the international could get involved and say no union can charge less than $3 an hour. Right. And that's because all the union members are also members of the international, which is not the case here. Union members are not. The reason that that's okay in your book is because it's been imposed on everybody else as well so that when there's a vote taken at the international, you're cutting all risks to some degree. You know, you're all bleeding. Is there any hint of any kind of skullduggery going on here in the record? I would say yes, Your Honor. Well, what's in the record that kind of raises sort of? Sure. The record shows the following, that the person sitting on the district council, the delegates to the district council, are virtually all paid union officials. We've gone through that in detail. More importantly, none, not a single one of them will pay the working dues increase or the organizing fee assessment because those assessments are based on work performed under the local 166 contract. None of these people, as full-time union officials or full-time union staff, work under those contracts. So they'll never pay this increase. They'll never pay this organizing fee. They're just saying, you guys pay it. You guys give the money, put it in the cloffers so that we can pay higher salaries to ourselves. So, well, they didn't say that. The implication is they're not suffering. But that's the way you see it. They're not suffering the type of economic pain that is the essence when you impose dues on yourself. In either the delegate situation or in the, you know, local union situation. In other words, the members are saying, is it worth it to us economically to fund the union to this greater extent? Or do we feel that this is something we'd rather have the money for ourselves and have a democratic debate on that society, that issue, and in the case of local unions, a secret ballot vote without coercion on that issue? I'm trying to understand your argument. Is your argument that because the local union members are not members of the district council, that the district council cannot impose dues increases on all of the locals? Well, no. They can't impose dues. Because the district ñ because there are not ñ the individual local union members are not members of the district council. The district council could only impose dues increases on the individual locals. For example, the district council could say every local now has to pay X more dollars to the district council. Each local would then just have to decide how it wanted to pay that, whether it wanted to, for example, have a dues increase among its local. So you're saying they could never directly impose dues on the local ñ on members of the locals that are a part of the district council? Not directly on the members, no. Even on an across-the-board, under this structure. Because, now, I would add ñ But why ñ That's if we agree with your interpretation of the statute. I think that's the interpretation Patterson adopted. It's interpretation that I think is compelled by this statutory language. Why can the international do that, but the regional ñ International. Because each member ñ because each member of the local union is also a member of the international. In other words, it has ñ they are ñ Members of the local are not a member of the district? Right. Only the district council. If you look at their LM-2 forms, it indicates that the members of the district council consist of 15. There are 15 members, which refers to ñ Why aren't the members of the locals just by ñ just ñ they're just part of the whole council? I mean, they're part of the whole body that makes up the regional group of unions. Because, Your Honor, that's like saying why does ñ why does one ñ why, for example, does anyone structure an organization in a particular way? They did it in a particular way. It's an independent entity. It's like saying why preferred shareholders have different rights in common. So what's the purpose of the council, then? The purpose of the council is to conduct whatever business it wants to on a regional level. But the question of whether it can impose duties ñ They seem to have more authority than that. Well, they can ñ they have some powers of negotiation. They have some powers of representation. They have some powers, you know, depending on what the Constitution says, but the power that is ñ they ñ Okay. But, I mean, they may have ñ they have ñ I mean, they have functions. And as you can see, that they ñ we have contracts that appear to be negotiated by the district council. Right. And I think ñ Contracts that are negotiated by one ñ For some reason, the way I read the briefs or the record or something, I had a ñ it struck me that there was some involvement by the council in these particular contracts. But I may have misread the record. And you have a ñ you have a better understanding of the record than I do. They approve this, and they ñ well, but they actually approve that it's sort of an allocation of dues. But there's nothing in the contracts that says, you know, that indicates ñ You haven't addressed the other fee that was in ñ The organizing fee? The organizing fee. And if you do that for just a moment, I would ñ I'd appreciate it. Yeah. The organizing fee is an assessment. And under the LMRDA, any assessment has to be ñ meet the same voting rules as the ñ as the dues increase. I thought these assessments ñ some of these assessments had been preexisting. And the ones that are at issue here seem to be the ones that were imposed by the international. Two points, Your Honor. First, the international imposed no assessment on individual union members. They imposed an assessment on local unions. So that you can't convert an assessment imposed by ñ on local unions into an assessment imposed disparately on individual locals. I mean, that's the evidence. So it's your position that the international can't say all ñ all local unions within the particular area are going to make a minimal assessment of 50 cents an hour for organizing fees? Sure they can. But that's an assessment on local unions, not local union members. In other words, they can say that local unions increase their per capita tax. They can pay more to ñ but the ñ and in fact, the evidence in this case is that the way the assessment is paid for every other local in the Northern District Council is by a deduction from their working dues. In other words, they pay one amount for working dues. The union then takes a portion of that amount for the organizing fee. But in 166, they take ñ pay the working dues, and then they pay an additional amount. The members pay an additional amount taken from their salaries for the organizing fee. So the evidence ñ and the evidence is that the ñ while the international can impose an ñ a organizing fee on your local unions, this is what they did, but you can't convert that into a financial obligation, a personal ñ a personal financial obligation for individual members, when that's not what the international convention did. Now, where did the organizing fee ñ where did the organizing fees or dues or assessments ñ where did they go? For local 166, the evidence is they went to 166. Were they supposed to go to 166, or were they supposed to go to the international? The resolution passed by the international was that they would go to the local ñ the district council's organizing fund. They should have ñ they should all be traced ñ they all should be in some ñ Traced to the organizing fund, right. To the organizing fund at the council level. Yes. And is that what happened here? No. We believe that the evidence is that the money was collected and kept by the local union. That was what these charts created by the witness for the ñ that we called on that, that they created the charts that are in the excerpts of records, chose all the money going to the local. The evidence ñ So I ñ when the employers pay, like in this situation, where does the money go? Okay. Well, the employers don't pay. It's the union members. Employers deduct the money. They deduct it out of their pay and they collect it. Where do they send the check? They send a check to the trust funds, which collect a whole bunch of benefit funds. Right. The trust funds then apparently divide this out, you know, and then send it in various directions. Right. Depending on what the money is. And so it's your view that this particular chunk or portion went back to the local union 66? Yes. 166? That is ñ the evidence in this case is that ñ and from the chart is that that's what happened. The contrary evidence that they assert is that they say they were lying to testimony that some portion of this organizing fee collected from 166 members went to the ñ went to the district council fund. But a portion is not all. Okay. Let's hear from the other side and then I'll give you a minute to rebuttal ñ for rebuttal. Good morning. Could you move the mic down closer to you and keep your voice up, please? Sure. Roberta Perkins, Weinberg, Roger Rosenfeld for the three unions at issue. I would like to focus ñ because there does seem to be some confusion about the organizing fee that was imposed by the international. That fee was imposed in a general convention, applied across the board to every union under the LIUNA umbrella. Resolution 12 reads in part, and this is at 169 in the record, ìEvery local union having jurisdiction in the construction industry shall pay 25 cents per hour to be phased in over three years to its regional organizing fund for all hours worked by its members in construction.î That non-construction local unions shall pay the same as long as the regional organizing funds, organizing activities extend to that jurisdiction. That 25 cents per hour was across the board to every union under the LIUNA umbrella  That is proper under the LMRDA Section B, which allows an increase in dues or an assessment by a labor organization other than the local, which can be done by a majority of votes of the delegates voting at a regular convention. Does that bind the union members or just the union? That binds the union members, because it's passed on as a per capita tax to the union. At least that is how Local 166 chose to do it, and that's how the district council chose to do it. And your questions about the district council, the district council has the ultimate authority under its constitution to negotiate the fees and assessments and initiation dues for the local unions underneath it. We're not in a situation where Local 166 raised the dues, and that, the LMRDA clearly requires a secret ballot vote. The dues increase was in contracts negotiated by the district council. And you're shifting from the organizing fee to the fees? I'm sorry. You've got to keep this straight for me. All right. The organizing fee. Let me stick with the organizing fee. The organizing fee was implemented over a three-year period across the board to all the unions. And the implementation, at least by the Northern California District Council, was done in conjunction with contract negotiations. There were two contracts where there was no organizing fee at all. Those two contracts, there was a 16-cent organizing fee imposed in one of the contracts and a 25-cent fee imposed in another one. We've got nice little charts in the ---- That may have been where I was thinking of the organ ---- where the council was involved in negotiating the ---- it was this fee. Correct. Well, it was also the dues increase. But we'll get to that in a minute. We'll get to that. We'll get to that. The other two contracts which had organizing fees, which are admittedly clearly obviously in excess of the 25 cents per hour, those preexisted this contract. The contract that local 166 members voted on, not once but twice, there was no increase in those two other contracts. So I think the organizing fee imposed by LIUNA is 100 percent in line with the LMRDA. As to your question about can you impose it on the members, the district court properly found that the local was not a substantially distinct organization from the district council. The local is bound by the decisions of LIUNA, the international. That's in the LIUNA constitution. The affiliates are bound by the local and district council constitutions. And the Tenth Circuit decision of IML says that local members bound by the constitution and bylaws of the union under which a local is an affiliated. They are bound by the constitutions. And, yes, the ---- Could they have imposed the organizing assessment in some other manner other than per capita? Sure. The international could have said we are imposing a 25 percent or 25 cents per hour worked organizing fee. Now, could have walked in, said impose this effective next month. Tax all your members 25 cents for every hour they work. The international chose to phase it in over a three-year period. They could have ---- So what is the vote that only affects Local 166? The vote that only affects Local 166 is the dues increase. And that dues increase was in a contract in conjunction with a collective bargaining agreement that was negotiated by the district council. Now we are talking about the dues increase and not the organizing assessment. Right. And it does get confusing. Right. Because there are two separate issues. So if you deal with it, so just taking up the dues increase, did I misread the record? I don't think so. The dues increase at issue here was negotiated by the district council under its authority, and that's authority that the union, the local, ceded to the district council to ---- this is, I'm looking at 160 in the excerpts of records. The dues, the initiation fees and dues to be paid by members and apprentices to the local affiliated unions, or the ---- excuse me. The initiation fees and dues to be paid by members and apprentice members to local unions affiliated with the district council shall be affiliated and regulated by the district council. Okay. The district council set these dues. The district council sent out notice of the dues increase, to which Mr. Corns objected. But what gives the district the right to raise the dues of only one local as opposed to issuing an across-the-board increase? Because the district is also empowered to negotiate the contracts for that particular local, Local 166 is a more specialized local ---- well, Local 166 is a specialized local in that its members are plastering cement masons and hide carriers. So it was Local 166 contracts were up. It was time for negotiation. That dues increase was negotiated as part of the negotiations for Local 166. It doesn't mean that the district council did not raise dues for the other locals that it negotiated contracts for either before or after. The focus was just on 166, and the district council was acting pursuant to its authority to negotiate. So they negotiated these contracts, new contracts that had this dues increase. Mm-hmm.  So the local members in 166, they got to vote on the contracts, correct? Correct, twice. Yeah. But let me ask you this. By sticking in the dues increase into the contracts, does that foreclose any possibility of a secret ballot on just the limited question of a dues increase? The evidence in the record is that had Mr. Corns or anybody else that day at the meeting requested a secret ballot vote, one would have been provided. Well, that's not my question. No, I realize. That's not ---- that's ---- Does it foreclose a secret ballot vote? Yes. Because it ---- I want to say, no, it doesn't foreclose a secret ballot vote, but by the same token, because you're voting on ratification of the collective bargaining agreement with the dues increase, because these two issues are so intertwined, a secret ballot vote would not be feasible, because you could reject the dues increase and say, yeah, we're going to take the wage increase, and you undo the CBA altogether. They go hand-in-hand, and they are intertwined. So when ---- so when what's ---- so when there was the request for the standing vote or whatever, when Mr. Corns asked for the standing vote, what was that vote on? The vote was on ratification of the contract, which included the dues increase. That had been explained to the membership in a prior written notice. A representative of the district council came out and, before the vote was taken, again explained what the new contract entailed, including a dues increase. There was a standing vote to which Mr. Corns objected. The vote was in favor of ratification. Mr. Corns objected to that vote because it was counted by the son of the president of Local 166. A second vote was held. The members then agreed to have two independent parties, one the Northern California District Council representative and another. They agreed that those two people could count the second ballot or the second standing vote, and the second standing vote again affirmed. And under Mori, this is sufficient protection for the members' rights. And I am certainly not up here advocating that a --"there is no right to a secret ballot vote." It's just not in this instance. So then the district then stepped in, correct? Correct. Correct. Why was that necessary? I think it was just to ensure that this was a proper, valid and legitimate vote, because Mr. Corns did continue to object. The general counsel of LiUNA said, do a special dues convention. That dues convention went out with timely notice. All delegates attended, including the two Local 166 delegates. And Mr. Corns argues that these were union officers, big deal. They're never going to be able to do that. Can you explain in terms of 101 how the district has the authority to do that? It is under 101a3b in the case of a labor organization other than a local labor organization. But that begins with you have to start with 3. So you have to start with the introductory paragraph in a3, which begins, which if you cut past the international there, which is not applicable right now, the rates of dues and initiation fees paid by members of any labor organization shall not be increased. That's a prohibition. Then there's an except clause with two subclauses. And it tells us, then, that in the case of a local labor organization, which would be Labor 166, that their members' dues may be increased, and then it gives us procedures, including the secret ballot. Right. That doesn't seem to help you very much. No, but subpart b, the other exception is in the case of a labor organization such as the district council. Yeah. But it doesn't say anything about increasing the members, the locals. That says in the case, in other words, the rates and increases of members of any labor organization, including labor organizations other than a local labor organization or federation, that would be the Northern District California Council, shall not be increased. And then here are your, here are the requirements in the law as to under what circumstances you may raise the fees of your members. But this is not, these are not your members. This is local 166 members. The local 166 members are, by virtue of their affiliation with LIUNA, members of the district council and of the international. What says that? What says that? It's the, that is found in the Constitution of the local, and that's at Article 2, Section 2, which is 105 of the record. And that says that members of the local are members of the district? Well, it says that at 106, let me just get there, it's Article 18, Section 1. Each affiliated local union and each affiliated district council shall comply with all of the obligations provided by the uniform local constitution, the district council constitution, and the international constitution. They are subordinate bodies of the international, and under the IML decision, they are the local members, they're all members. They are not separate and distinct labor organizations. I have to obey the court of appeals, but I'm not on the court of appeals. I mean, this just says that you have to comply with the requirements that, but what makes them members? Are you saying that in effect makes them members? Yes. They're, they are members. They, without the members, there would be no union, there would be no district council, and frankly, there would be no international. If all the members go away, there's no union. And I think that, I frankly think that Mori, the Mori decision guides this Court. Mori, Mori is factually more like this case than it appears because the imposition of increase in Mori was not a uniform raise of the local dues across the board. But as the decision said, a minority within the international was singled out for a field dues increase. And that's what happened here. Mori stands for the proposition that members' dues can be validly increased without a secret ballot if members are represented at a convention. They were. The local 166 delegates to the dues convention were not elected by the members of 166. The increase is not an attempt to exploit workers. There was no attempt to exploit workers here. There's nothing to that effect in the record, and there's no hint of skullduggery in the record. And it's my turn. I have a better turn. Okay. The increase reflects the judgment of the entire union concerning the needs of the local. I, we submit that Mori has been satisfied here and that the increase in dues and the increase in the organizing fee were legitimate under the Al-Ahmadiyya. Okay. Thank you, counsel. Thank you. I'll give you a minute for rebuttal. Yes, Your Honor. Taking the last question first, the question of who are the members of the district council. The members of the district council are cited in the, in the, in the bylaws of the Constitution, and they are defined as Which, which, which, which Constitution are you talking about? The Constitution of the, I think it's in the Uniform District Council Constitution. It's, it's at 2ER153 lines 5 through 7, I believe, and it states, The members of the district council shall consist of delegates from affiliated local unions, not members of local unions, but delegates. The LMR, the LM2, which is also cited in footnote 1 of our brief and quoted, lists the category of membership of the district council as affiliated local unions and indicates 15. In other words, it doesn't say delegates. It says the affiliated local unions. Somewhat inconsistent, but consistent with the view that neither the delegates nor the affiliated local unions are the local union members. And I think that is clear. Secondly, in terms of the approval of the contract, the law requires secret ballot vote. They, they can't avoid that by combining issues. Every case that's considered that has upheld the secret ballot vote issue, even when you combine issues, when they have allowed the combining of issues. They have to carve off the dues increase and do a subset? I would imagine they have to, that they have to have some way of the members getting to express that we'll take the wage increase, not the dues increase. And, of course, members may well want to. What happens to the contract? Huh? Do you have to go back to the bargaining table? No. That would, the dues increase is an internal union matter. It's not a matter of negotiation with employers. I mean, employers can't sit there and say, no, we think you should get less dues. You know, I mean, if employers could say that, they wouldn't just have the right. They'd be saying it all the time. Dues aren't an issue. It's an internal matter. So, yes, so it's an approval of the contract and approval of dues are separate matters. Dues have to be by secret ballot. That's what the law says. Finally, with regard to the organizing fee, imposing a per capita tax may, unions may decide to increase dues, but they can only increase dues to pay that per capita tax through the mechanisms provided by the law, which means local unions want to increase their dues to pay a per capita additional charge on their local unions, like the organizing fee was made. Secret ballot vote to pay that. Maybe the union, local union members would have the local unions pay it out of their regular income or their savings or whatever. Just a, this is your assessment, $50 or something? Whatever the assessment. But we would note that the financial burden test, which we discussed in the briefs, would say that an onerous task would then trigger the due, an onerous assessment which would force union members to raise their own dues, then all of a sudden it's not a true per capita tax, but becomes a local dues increase subject to that. And finally, Your Honor, I direct your attention to footnote 2 in Morey. It expressly notes the White case as the only case actually addressing the laborer's case, the only case, and concluded that following the rule urged by the defendants here would essentially eviscerate the right to vote. The White case was cited with approval by the more, by the more. Well, it's questionable whether they cited it with approval. They cited it as an example. They described themselves as somewhere falling in between. So it seems to me that we are exactly the White case, so that I don't think the Court saying that the Morey case fell in between can be read as reasonably saying anything other than saying, well, if you fell into the White case, we would not have approved this dues increase. Thank you. Thank you, counsel. We appreciate both arguments, very helpful in this case. And with that, I'll submit this case, and that ends our session for today, as well as for the week. Thank you all very much. Thank you. Thank you.
judges: Vance, Paez, Bybee